UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA K. MILILLO,

                                    Plaintiff,          Case # 18-CV-432-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

Plaintiff Pamela K. Milillo brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On September 3, 2014, Milillo protectively applied for DIB and on March 30, 2016, she filed for SSI with the Social Security Administration ("the SSA"). Tr.[1] 187-88, 211-22. She alleged disability since January 3, 2013 due to a heart condition, bipolar and delusional disorders, dyslexia, paranoid schizophrenia, and transient global amnesia. Tr. 230-31. On January 12, 2017,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

Milillo, a vocational expert ("VE"), and Milillo's mother appeared and testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 27-69. On March 7, 2017, the ALJ issued a decision finding that Milillo was not disabled within the meaning of the Act. Tr. 15-23. On February 13, 2018, the Appeals Council denied Milillo's request for review. Tr. 1-6. This action that seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Milillo's claim for benefits under the process described above. At step one, the ALJ found that Milillo had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that Milillo has paranoid schizophrenia, which constitutes a severe impairment. Tr. 17-18. At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 18-19.

Next, the ALJ determined that Milillo retained the RFC to perform a full range of work at all exertional levels, but she can perform only unskilled work that does not require production level tasks. Tr. 19-21. At step four, the ALJ relied on the VE's testimony and found that Milillo cannot perform her past relevant work. Tr. 21-22. At step five, the ALJ relied on the VE's testimony and found that Milillo can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE found that Milillo could work as a cleaner, laundry sorter, and photocopy operator. *Id.* Accordingly, the ALJ concluded that Milillo was not disabled. Tr. 23.

## II. Analysis

Milillo argues that remand is required because the ALJ improperly evaluated the medical opinions—specifically, two opinions co-signed by nurse practitioner Elizabeth Masco and Dr. Robert Young—and mischaracterized her mother's testimony. ECF No. 10-1 at 8-16. The Court agrees.

The ALJ must "evaluate every medical opinion [he] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). When the ALJ evaluates a

medical opinion that a nurse practitioner prepares and a treating physician signs off on, it "should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272 GLS/ESH, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) (citations omitted).

Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In January of 2013, NP Masco and Dr. Young opined that Milillo has extreme limitations in her ability to make judgments on simple and complex work-related decisions and to understand, remember, and carry out complex instructions; a marked limitation in her ability to understand and

5

remember simple instructions; and a moderate limitation in her ability to carry out simple instructions. Tr. 397. They also indicated that Milillo has an extreme limitation in her ability respond appropriately to usual work situations and changes in a routine work setting and moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers. Tr. 398.

In September of 2014, NP Masco and Dr. Young opined that Milillo is seriously limited[2] in her ability to understand, remember, and carry out detailed instructions and set realistic goals or make plans independently of others, and that she is unable to meet competitive standards[3] in dealing with the stress of semi-skilled and skilled work. Tr. 310. They also opined that Milillo is unable to meet competitive standards in her ability to interact appropriately with the public and travel in unfamiliar places and has no useful ability to function[4] in using public transportation. *Id.* NP Masco and Dr. Young concluded that Milillo's impairments or treatment will make her absent from work more than four days per month. Tr. 311.

The ALJ's decision completely ignores NP Masco and Dr. Young's January 2013 opinion.[5] This was improper because the SSA's regulations require the ALJ to evaluate *every* medical opinion he receives. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ's failure to evaluate the January 2013 opinion is particularly egregious because it is a treating source opinion and is the

---

[2] This means that Milillo's ability to function in these areas would frequently be less than satisfactory in any work setting. Tr. 309.

[3] This means that Milillo cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting. *Id.*

[4] This means that Milillo cannot perform this activity in a regular work setting. *Id.*

[5] The Commissioner asserts that this omission was harmless and offers several reasons why she believes the January 2013 opinion can be rejected. ECF No. 12 at 13. The ALJ did not offer any reasons for rejecting the January 2013 opinion, or even indicate that he reviewed it, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.").

only record opinion[6] aside from NP Masco and Dr. Young's September 2014 opinion that, as discussed below, the ALJ rejected. Although the January 2013 and September 2014 opinions are similar in several ways, the 2013 opinion addresses Milillo's ability do simple, unskilled work—which the ALJ found she could perform—and prescribes limitations in that area, while the 2014 opinion only addresses her ability to do semiskilled and skilled work.

The ALJ's decision acknowledges NP Masco and Dr. Young's September 2014 opinion and that it indicates "an inability to deal with the stress of semiskilled and skilled work, travel to unfamiliar places, and interact appropriately in the general public." Tr. 21 (citing Tr. 307-12).[7] The ALJ afforded this opinion "little weight" because he found it "inconsistent with the record, which establishes [that Milillo] did travel to unfamiliar places and interacted with the public regularly" and because Milillo had "mostly unremarkable mental status examinations during the vast majority of the period of review." *Id.*

Regardless of whether the ALJ properly discounted the September 2014, he created a gap in the record when he rejected this opinion and effectively rejected the January 2013 opinion, which were the only medical opinions as to Milillo's mental ability to perform work-related functions on a regular and continuing basis.[8] *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a

---

[6] State agency review physician Cheryl Butensky reviewed Milillo's record and found "insufficient evidence to make a decision for the time period being reviewed." Tr. 340-41. Milillo did not undergo a consultative examination.

[7] The ALJ ignores NP Masco and Dr. Young's opinion that Milillo will be absent from work more than four days per month which, if credited, would render her disabled. *See, e.g.*, *Pennetta v. Comm'r of Soc. Sec.*, No. 18-CV-6093-FPG, 2019 WL 156263, at *5 n.11 (W.D.N.Y. Jan. 10, 2019) (citing VE testimony indicating that an individual who consistently misses two days of work per month is unemployable).

[8] "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996). The SSA evaluates the claimant's ability to perform mental work-related activities on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(c), 416.945(c).

7

"significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original). Moreover, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted).

When an ALJ does not rely on a medical opinion to formulate the claimant's RFC, he must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013). Here, the ALJ summarizes and cites some of the record medical evidence, but he does not tie that evidence to the mental demands of competitive work. Tr. 19-21. In attempt to support his RFC determination that Milillo can perform only unskilled work that does not require production level tasks, the ALJ affords "some weight" to Milillo's mother's hearing testimony that Milillo can work a low stress job. Tr. 21 (referring to Tr. 65-66). Milillo argues that this mischaracterizes her mother's testimony, and the Court agrees.

At the hearing, Milillo's attorney asked Mrs. Milillo whether she thought her daughter could work a full-time job that did not have the "kind of stress of having to get something done in a certain amount of time." Tr. 65-66. Mrs. Milillo responded that "[i]f it was low, low stress, the same thing every day . . . possibly." Tr. 66. Mrs. Milillo indicated that her daughter's prior employer was "very good to her" and "understood her situation," but then stated that "[i]n the real world . . . it's not the same deal." *Id.* The ALJ took this to mean that Milillo could perform low-stress work, even though Mrs. Milillo only said that her daughter could "possibly" perform a "low,

low stress" job and explained that her daughter was previously successful at work because she had a very accommodating employer.

Without a function-by-function assessment relating the medical evidence to the mental requirements of competitive work or reliance on a medical source's opinion as to Milillo's functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that the ALJ is not required to perform an explicit function-by-function RFC analysis but that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review") (citation omitted). Accordingly, remand is required. On remand, the Court directs the ALJ to consider and explain the weight afforded to NP Masco and Dr. Young's January 2013 and September 2014 opinions and, if warranted, obtain a consultative psychiatric examination or other opinion evidence as to Milillo's ability to perform mental work-related functions.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 15, 2019
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court